IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION

**JONATHAN GUINES**                                                    **PLAINTIFF**

v.                                                                      **No. 4:19CV80-DAS**

**MISS. DEPT. OF CORRECTIONS
DR. GLORIA PERRY
CORRECTIONAL OFFICER HONEYCUTT**             **DEFENDANTS**

**MEMORANDUM OPINION**

This matter comes before the court on the *pro se* prisoner complaint of Jonathan Guines, who challenges the conditions of his confinement under 42 U.S.C. § 1983. For the purposes of the Prison Litigation Reform Act, the court notes that the plaintiff was incarcerated when he filed this suit. The plaintiff has brought the instant case under 42 U.S.C. § 1983, which provides a federal cause of action against "[e]very person" who under color of state authority causes the "deprivation of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983. The plaintiff alleges that the defendants denied him adequate medical care and failed to protect him from assault by another inmate. The defendants have moved for summary judgment; the plaintiff has not responded, and the deadline to do so has expired. The matter is ripe for resolution. For the reasons set forth below, the defendants' motion for summary judgment will be granted. The plaintiff's claims regarding denial of adequate medical care will be dismissed with prejudice, and the claim regarding failure to protect will be dismissed without prejudice for failure to exhaust administrative remedies.

**Summary Judgment Standard**

Summary judgment is appropriate if the "materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" show

that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a) and (c)(1). "The moving party must show that if the evidentiary material of record were reduced to admissible evidence in court, it would be insufficient to permit the nonmoving party to carry its burden." *Beck v. Texas State Bd. of Dental Examiners*, 204 F.3d 629, 633 (5th Cir. 2000) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986), *cert. denied*, 484 U.S. 1066 (1988)). After a proper motion for summary judgment is made, the burden shifts to the non-movant to set forth specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby,* Inc., 477 U.S. 242, 249, 106 S. Ct. 2505, 2511, 91 L. Ed. 2d 202 (1986); *Beck*, 204 F.3d at 633; *Allen v. Rapides Parish School Bd.*, 204 F.3d 619, 621 (5th Cir. 2000); *Ragas v. Tennessee Gas Pipeline Company*, 136 F.3d 455, 458 (5th Cir. 1998).

Substantive law determines what is material. *Anderson*, 477 U.S. at 249. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.*, at 248. If the non-movant sets forth specific facts in support of allegations essential to his claim, a genuine issue is presented. *Celotex*, 477 U.S. at 327. "Where the record, taken as a whole, could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 89 L. Ed. 2d 538 (1986); *Federal Savings and Loan, Inc. v. Krajl*, 968 F.2d 500, 503 (5th Cir. 1992).

The facts are reviewed drawing all reasonable inferences in favor of the non-moving party. *Allen*, 204 F.3d at 621; *PYCA Industries, Inc. v. Harrison County Waste Water Management Dist.*, 177 F.3d 351, 161 (5th Cir. 1999); *Banc One Capital Partners Corp. v. Kneipper*, 67 F.3d 1187, 1198 (5th Cir. 1995). However, this is so only when there is "an actual controversy, that is, when both

parties have submitted evidence of contradictory facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994); *see Edwards v. Your Credit, Inc.*, 148 F.3d 427, 432 (5th Cir. 1998). In the absence of proof, the court does not "assume that the nonmoving party could or would prove the necessary facts." *Little*, 37 F.3d at 1075 (emphasis omitted).

The very purpose of summary judgment is to "pierce the pleadings and assess the proof in order to see whether there is a genuine issue for trial." Advisory Committee Note to the 1963 Amendments to Rule 56. Indeed, "[t]he amendment is not intended to derogate from the solemnity of the pleadings. Rather, it recognizes that despite the best efforts of counsel to make his pleadings accurate, they may be overwhelmingly contradicted by the proof available to his adversary." *Id*. The non-moving party (the plaintiff in this case), must come forward with proof to support each element of his claim. The plaintiff cannot meet this burden with "some metaphysical doubt as to the material facts," *Matsushita*, 475 U.S. at 586, 106 S.Ct. at 1356, "conclusory allegations," *Lujan v. National Wildlife Federation*, 497 U.S. 871, 871-73, 110 S.Ct. 3177, 3180 (1990), "unsubstantiated assertions," *Hopper v. Frank*, 16 F.3d 92 (5th Cir. 1994), or by a mere "scintilla" of evidence, *Davis v. Chevron U.S.A., Inc.*, 14 F.3d 1082 (5th Cir. 1994). It would undermine the purposes of summary judgment if a party could defeat such a motion simply by "replac[ing] conclusory allegations of the complaint or answer with conclusory allegations of an affidavit."

**Plaintiff's Allegations**

Jonathan Guines is an inmate in the custody of the Mississippi Department of Corrections ("MDOC") and incarcerated at the Central Mississippi Correctional Facility ("CMCF"). Compl. [1] at 1 (CM/ECF Pagination). On April 20, 2019, he filed suit under 42 U.S.C. § 1983 alleging that he

has received inadequate medical care while in MDOC custody. *Id*. at 4-5. Mr. Guines alleges that the defendants denied his request for a leg brace and orthopedic shoes to assist with his difficulty walking, as well as delaying his access to seizure medication. Compl. [1] at 8-14. Mr. Guines also alleges that defendant Honeycutt caused him to be attacked by another inmate. Compl. [1] at 4.

## Undisputed Material Facts

Jonathan Guines was convicted and sentenced to serve a term in the custody of MDOC on August 21, 2017. Exhibit "A," Plaintiff's Institutional Record, at "MDOC-GUINES-000050. Mr. Guines alleges that he has seizures and a loss of use in his left hand and left foot due to a gunshot wound to his head and traumatic brain injury sustained as a child. Pl.'s Memo, [2] at 9. The medical problems listed in Mr. Guines' MDOC chart summary as of July 6, 2020, include malingering, history of gunshot wound, history of traumatic brain injury, contracture of hand joint, arthritis, and seizures. Exhibit "B," Plaintiff's Medical Records, at MDOC-GUINES-000094.

On August 22, 2017, during his initial medical intake and screening, his history of the head wound and his problems with seizures and mobility in his left arm were recorded. *Id*. at MDOC-GUINES-000098. Medical personnel noted that he reported taking 500 mg of Keppra (a medication used to treat seizures) twice a day. *Id*. No disabilities were noted, and he was approved for placement in general population. *Id*. at MDOC-GUINES-000098-000099.

Mr. Guines' records show that, on August 24, 2017, two days after intake, Mr. Guines reported seizure activity and told the responding nurse that he had not received seizure medication since he was placed in MDOC custody. *Id*. at MDOC- GUINES-0000103. He was provided with seizure medication that same morning, and the prescription was added to his file. *Id*. at MDOC-GUINES-0000104-0000106.

In a follow-up physical exam later that morning, medical personnel noted that Mr. Guines shuffled while he walked, but his lower extremities had normal range of motion and strength with no joint enlargement or tenderness observed. *Id*. at MDOC-GUINES-0000107. His medical records show that his gait and extremities were noted as normal in physical assessments[1] until April 27, 2019, which was the first documented instance of Mr. Guines' complaint of discomfort in his left leg and request for a leg brace. *Id*. at MDOC-GUINES-000348- 000350. He was referred to a nurse practitioner to assess the need for a leg brace. The nurse practitioner made the following note about Plaintiff's assessment on May 1, 2019:

> PT IN TODAY REQUESTING A BRUCKNER'S ORTHOPEDIC LEG BRACE FOR HIS LEFT LEG FOR WEAKNESS AS A RESULT OF A GSW THAT OCCURRED IN 1998. ADVISED PT THAT I WOULD LOOK BACK IN EMR AND SEE IF THERE WAS A RECCOMMENDATION FOR A LEG BRACE, PT WAS NOT HAPPY WITH THIS PLAN AND IS ARGUMENTATIVE AND DEMANDING. ADVISED PT AGAIN OF THE PLAN AND HE CAN NOW RETURN TO HIS ZONE. PT CONTINUES TO BE ARGUMENTATIVE.
>
> UPON EMR REVIEW OVER THE PAST YEAR PT HAS NEVER COMPLAINED ABOUT LEFT LEG WEAKNESS AND HAS NOT HAD A LEG BRACE. HIS ONLY COMPLAINT VOICED IS IN REFERENCE TO HIS LEFT ARM / HAND DEFORMITY WITH LROM, AND PT HAS A BRACE FOR LEFT ARM / HAND, WEARING IT IN CLINIC TODAY. PT HAS ALSO RECEIVED PHYSICAL THERAPY FOR HIS LEFT ARM / HAND. IT IS ALSO APPARENT AS DOCUMENTED IN EMR THAT PT HAS A LONG STANDING HISTORY OF BEING DEMANDING, ARGUMENTATIVE, INAPROPRIATE WITH STAFF, AND NONCOMPLIANT.

*Id*. at MDOC-GUINES-000348- 000351. Mr. Guines' gait was noted as "mostly normal," and it was determined that a leg brace was not medically indicated, but a medical equipment request for a cane was nonetheless issued. *Id*. at MDOC-GUINES-000352.

---

[1] MDOC-GUINES-0000107, 0000153, 0000179, 0000213, 000222, 000235, 000250, 000304, 000322, 000347.

Mr. Guines filed the instant suit on May 23, 2019, alleging that Dr. Perry refused to approve a leg brace for him. Compl., [1] at 4. On June 18, 2019, Mr. Guines requested physical therapy for weakness on his left side, but also told medical providers that he wanted to transfer to another facility and that physical therapy could potentially prevent his transfer. *Id*. at MDOC-GUINES-000358-000361. He told the doctor that he wanted to be transferred more than he wanted physical therapy. *Id*. at MDOC-GUINES-000361. The doctor ordered Mr. Guines an exercise ball, resistance bands, and a left leg brace. *Id*. at MDOC-GUINES-000362. According to Mr. Guines' medical records, the receipt for the leg brace was printed on June 21, 2019. *Id*. at MDOC-GUINES-000363. CMCF's receipt for diabetic shoes for Plaintiff was documented on August 15, 2019. *Id*. at MDOC-GUINES-000372.

## Qualified Immunity

All defendants in this case are cloaked with qualified immunity regarding Mr. Guines' claim for denial of adequate medical care. "Government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). To overcome the qualified immunity defense, a plaintiff must meet a two-pronged test. He must first allege a violation of a clearly established constitutional right. *Wilkerson v. Stalder*, 329 F.3d 431, 434 (5th Cir. 2003); *Heitschmidt v. City of Houston*, 161 F.3d 834, 836–37 (5th Cir.1998). "To be 'clearly established' for purposes of qualified immunity, '[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that

right.'" *Johnson v. Johnson*, 385 F.3d 503, 524 (5th Cir. 2004) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987)).

In addition to alleging the violation of a clearly established constitutional right, a plaintiff must also allege facts showing that the defendant's conduct was objectively unreasonable in the light of the law established at the time of the incident. *Heitschmidt*, 161 F.3d at 836–37. Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

When an official raises the qualified immunity defense, a complaint "must present more than bald allegations and conclusory statements." *Wicks v. Mississippi State Employment Svcs.*, 41 F.3d 991, 995 (5th Cir. 1995). A plaintiff must "allege with sufficient particularity all facts establishing a right to recovery, including facts which negate the official's immunity defense." *Id.*; see *also Nunez v. Simms*, 341 F.3d 385 (5th Cir. 2003) (holding that heightened pleading in qualified immunity cases requires plaintiffs rest complaint on more than conclusions alone). Plaintiffs "cannot be allowed to rest on general characterizations, but must speak to the factual particulars of the alleged actions." *Floyd v. City of Kenner*, 351 Fed. Appx. 890, 893 (5th Cir. 2009) (citing *Schultea v. Wood*, 47 F.3d 1427, 1433-34 (5th Cir. 1995)).

### Denial of Adequate Medical Care

Jonathan Guines claims that he was deprived of constitutionally adequate medical care while in MDOC custody. His main grievance stems from a purported denial of – or delay in – receiving a leg brace. He alleges that Dr. Gloria Perry refused to approve and pay for a leg brace and orthopedic shoes for him, and that this constitutes an unnecessary delay or denial of a required medical care. Compl., [1] at 4-5; Pl.'s Memo., [2] at 7-13.

In order to prevail on an Eighth Amendment claim for denial of medical care, a plaintiff must allege facts which demonstrate "deliberate indifference to the serious medical needs of prisoners [which] constitutes 'unnecessary and wanton infliction of pain' proscribed by the Eighth Amendment . . . whether the indifference is manifested by prison doctors or prison guards in intentionally denying or delaying access to medical care . . . ." *Estelle v. Gamble*, 429 U.S. 97, 104-105, 50 L. Ed. 2d 251, 260 (1976); *Mayweather v. Foti*, 958 F.2d 91, 91 (5th Cir. 1992). The test for establishing deliberate indifference is one of "subjective recklessness as used in the criminal law." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Under this standard, a state actor may not be held liable under 42 U.S.C. § 1983 unless plaintiff alleges facts which, if true, would establish that the official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 838. Only in exceptional circumstances may a court infer knowledge of substantial risk of serious harm by its obviousness. *Id*. Negligent conduct by prison officials does not rise to the level of a constitutional violation. *Daniels v. Williams*, 474 U.S. 327, 106 S.Ct. 662 (1986), *Davidson v. Cannon*, 474 U.S. 344, 106 S.Ct. 668 (1986).

In cases such as this, arising from delayed medical attention rather than a clear denial, a plaintiff must demonstrate that he suffered substantial harm resulting from the delay in order to state a claim for a civil rights violation. *Mendoza v. Lynaugh*, 989 F.2d 191, 193 (5th Cir. 1993); *Campbell v. McMillin*, 83 F. Supp. 2d 761 (S. D. Miss. 2000). A prisoner's mere disagreement with medical treatment provided by prison officials does not state a claim against the prison for violation of the Eighth Amendment by deliberate indifference to his serious medical needs. *Gibbs v. Grimmette*, 254 F.3d 545 (5th Cir.2001), *Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir. 1997).

"Deliberate indifference is not established when medical records indicate that [the plaintiff] was afforded extensive medical care by prison officials." *Brauner v. Coody*, 793 F.3d 493, 500 (5th Cir. 2015). Nor is it established by a physician not accommodating a prisoner's requests in a manner he desired or the prisoner's disagreement with the treatment. *Id.*; *Miller v. Wayback House*, 253 F. App'x 399, 401 (5th Cir. 2007). To meet his burden in establishing deliberate indifference on the part of medical staff, the plaintiff "must show that [medical staff] refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Brauner*, 793 F.3d at 498.

The plaintiff has not pled facts sufficient to show that Dr. Perry was involved in decisions regarding his medical treatment (regarding his leg problems or his seizure medication), as his allegations are broad and conclusory. Instead, he mentions unidentified people not party to the instant suit. Thus, his claims against Dr. Perry for denial of adequate medical care must be dismissed.

In addition, his allegations fail to state a valid constitutional claim. He requested a leg brace on April 27, 2019. He was referred to a nurse practitioner for evaluation a mere four days later, on May 1, 2019. The nurse practitioner determined that a leg brace was not medically necessary; instead, Mr. Guines received a cane, though his gait was "mostly normal," with a slight limp. Exhibit "B" at MDOC-GUINES-000352. Further, Mr. Guines refused physical therapy weeks after filing the instant suit. In addition, Dr. William T. Brazier at CMCF issued a medical device request form on June 18, 2019, and Mr. Guines received the brace three days later – on June 21, 2019. Thus, he received the leg brace he requested on April 17, 2019, in less in less than two months. In the meantime, he was issued a cane, and he was issued diabetic shoes in August. Mr. Guines merely disagrees with the

medical decision to issue a cane, rather than a brace, and this does not rise to the level of a constitutional claim for denial of adequate medical care. The small delay in receiving a brace does not equate to a denial of adequate medical care. These allegations fail to state a valid claim under 42 U.S.C. § 1983.

### Failure to Protect Claim Is Not Exhausted

The documents the parties have provided reveal that, as to his claim of failure to protect, the plaintiff did not exhaust the prison grievance process before filing the instant suit. The Prison Litigation Reform Act ("PLRA"), 42 U.S.C. §1997e(a), requires prisoners to exhaust any available administrative remedies prior to filing suit under 42 U.S.C. §1983. The exhaustion requirement protects administrative agency authority, promotes efficiency, and produces "a useful record for subsequent judicial consideration." *Woodford v. Ngo*, 548 U.S.81, 89 (2006).

A prisoner cannot satisfy the exhaustion requirement "by filing an untimely or otherwise procedurally defective administrative grievance or appeal" because "proper exhaustion of administrative remedies is necessary." *Woodford v. Ngo*, 548 U.S. 81, 83-84 (2006); see also *Johnson v. Ford*, 261 F. App'x 752, 755 (5th Cir. 2008)( the Fifth Circuit takes "a strict approach" to the PLRA's exhaustion requirement)(*citing Days v. Johnson*, 322 F.3d 863, 866 (5th Cir. 2003)); *Lane v. Harris Cty.Med.Dep't*, No. 06-20935, 2008 WL 116333, at *1 (5th Cir. Jan.11,2008)( under the PLRA, "the prisoner must not only pursue all available avenues of relief; he must also comply with all administrative deadlines and procedural rules").

The requirement that claims be exhausted prior to the filing of a lawsuit is mandatory. *Gonzalez v. Seal*, 702 F.3d 785 (5th Cir.2012). "Whether a prisoner has exhausted administrative remedies is a mixed question of law and fact." *Dillon v. Rogers*, 596 F.3d 260, 266 (5th Cir.

2010). As "exhaustion is a threshold issue that courts must address to determine whether litigation is being conducted in the right forum at the right time, . . . judges may resolve factual disputes concerning exhaustion without the participation of a jury." *Id*. at 272.

Mississippi Code Annotated § 47-5-801 grants the Mississippi Department of Corrections the authority to adopt an administrative review procedure at each of its correctional facilities. Under this statutory authority, the Mississippi Department of Corrections has set up an Administrative Remedy Program ("ARP") through which an inmate may seek formal review of a grievance relating to any aspect of his incarceration. This court approved the ARP Program in *Gates v. Collier*, GC 71-6-S-D (N.D. Miss. Feb. 15, 1994). *See also Marshall v. Price*, 239 F.3d 365, 2000 WL 1741549, at *1 (5th Cir. Nov. 6, 2000). On September 19, 2010, the ARP process was changed from three steps to two. *See Gates v. Barbour*, No. 4:71CV6-JAD, Doc. 1242 (N.D. Miss. Aug. 19, 2010); *Threadgill v. Moore*, No. 3:10CV378-TSL-MTP, 2011 WL 4388832, at *3 n.6 (S.D. Miss. July 25, 2011).

The two-step ARP process begins when an inmate first submits his grievance in writing to the prison's Legal Claims Adjudicator within thirty days of the incident. *Howard v. Epps*, No. 5:12CV61-KS-MTP, 2013 WL 2367880, at *2 (S.D. Miss. May 29, 2013). The Adjudicator initially screens the grievance and determines whether or not to accept it into the ARP process. *Id*. The screening phase operates as a filter – applied before the formal grievance process begins – to remove procedurally defective or otherwise invalid grievances. As set forth above, a prisoner cannot satisfy the exhaustion requirement by filing a procedurally defective grievance or appeal. *Woodford, supra*. Hence, rejection of a grievance during the screening phase terminates the grievance – and does *not* count as exhaustion of the grievance process. *See Seales v. Shaw*, No. 5:15-CV-59-KS-MTP, 2016 WL

616749, at *3 (S.D. Miss. Jan. 26, 2016), *report and recommendation adopted sub nom. Seales v. Wilkinson Cty. Corr. Facility*, No. 5:15-CV59-KS-MTP, 2016 WL 616385 (S.D. Miss. Feb. 16, 2016) (finding rejection during initial MDOC screening process not to constitute exhaustion); *Goldmon v. Epps*, No. 4:14-CV-0112-SA-SAA, 2015 WL 5022087, at *3 (N.D. Miss. Aug. 24, 2015) (same); *see also Robinson v. Wheeler*, 338 Fed. Appx. 437 (5th Cir. 2009) (per curiam) (not reported) (upholding Louisiana initial screening provision of prison grievance process).

However, if the defects in the original grievance were minor ("technical" or "matters of form") an inmate may submit a corrected grievance within five days of the rejection:

> If a request is rejected for technical reasons or matters of form, the inmate shall have five days from the date of rejection to file his/her corrected grievance.

*See* https://www.mdoc.ms.gov/Inmate-Info/Documents/CHAPTER_VIII.pdf (last visited April 3, 2019)).

If accepted, the grievance is forwarded to the appropriate official who then issues a First Step Response to the complaining inmate. *Howard, supra*. If the inmate is unsatisfied with the first response, he may continue to the Second Step by completing an appropriate ARP form and sending it to the Legal Claims Adjudicator. *Id.* The Superintendent, Warden or Community Corrections Director will then issue a final ruling, or Second Step Response – which completes the ARP process. *Id.* Issuance of the Second Step Response is the only way to complete the grievance process – and thus exhaust administrative remedies. If the inmate is unsatisfied with that response, he may file suit in state or federal court. *Id*.

Mr. Guines filed a grievance (MSP-19-0126) complaining of Officer Honeycutt's conduct. His grievance was, however, rejected because the relief he sought—to have Honeycutt banned from working at Unit 30—was beyond MDOC's power to grant through the ARP program. Exhibit "C,"

Affidavit of Richard Pennington, Director for the Administrative Remedy Program, and Plaintiff's ARP No. MSP-19-0126, at MDOC-GUINES-000007. Mr. Guines received notice of the rejection. *Id*. at MDOC-GUINES-000012. He attempted to appeal the ARP's response and proceed to the second step, rather than submitting a new request, MDOC-GUINES-000014, even though he was notified that he could not proceed to the second step on that rejection. *Id*. at MDOC-GUINES-000015. Mr. Guines did not submit a corrected request for an administrative remedy regarding Officer Honeycutt that sought relief the ARP is able to grant. *Id*. at MDOC-GUINES-000007.[2]

Mr. Guines received notice of the deficiencies in his ARP grievance and was told that he could not proceed to step two on that rejection; however, he failed to resubmit a corrected grievance to the ARP program. Hence, as to his claim regarding failure to protect, he has not exhausted his administrative remedies under the PLRA, and that claim must be dismissed without prejudice.

## Conclusion

For the reasons set forth above, the defendants' motion for summary judgment will be granted. The plaintiff's claims regarding denial of adequate medical care will be dismissed with prejudice because: (1) the defendants are cloaked with qualified immunity, and (2) the allegations fail to state a valid claim under 42 U.S.C. § 1983. In addition, the plaintiff's claims against defendant Honeycutt

---

[2] Mr. Guines submitted two other documents regarding Corrections Officer Honeycutt using the MDOC grievance form for each. However, he stated in the forms, "This is my 2nd Step Response to the Remedy Program …." Docs. 44-3 at 8, 10. He also stated that, as relief, "I would like to file a civil suit for 2.7 million," *id*. at 8, and "I would like a civil suit for 2.7 million …." *Id*. at 10. The labels, relief sought, and content of these documents show that Mr. Guines considered them to be attempts to appeal his original grievance, and the Administrative Remedy Program treated them as such. An inmate may not appeal a rejected grievance; instead, he must file a proper amended grievance within five days of receipt of the rejection. Mr. Guines did not follow this procedure.

regarding failure to protect will be dismissed without prejudice for failure to exhaust administrative remedies. A final judgment consistent with this memorandum opinion will issue today.

**SO ORDERED**, this, the 2nd day of November, 2021.

/s/ David A. Sanders
DAVID A. SANDERS
UNITED STATES MAGISTRATE JUDGE